# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Theresa Scott, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 125 C.D. 2017 |
| | : | Submitted: October 6, 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE P. KEVIN BROBSON, Judge
                     HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                              FILED:  December 20, 2017

Petitioner Theresa Scott (Claimant), petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) dated January 3, 2017, which affirmed the decision of the Referee who found Claimant voluntarily terminated her employment and was therefore ineligible for UC benefits pursuant to Section 402(b) of the UC Law (Law).[1]  Also, before the Court is the Board's Motion

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).  That section provides in relevant part:

An employe shall be ineligible for compensation for any week --

to Quash Claimant's Petition for Review (Motion) as untimely. After careful review, we grant Claimant's request for *nunc pro tunc* relief, and so deny the Motion. However, because Claimant did not inform Employer she needed an accommodation and did not provide Employer an opportunity to make a reasonable accommodation, we must affirm the Board.

The Board's findings, which it adopted from the Referee's Decision, are as follows. Claimant was employed by Allegheny County Human Services (Employer) as a full-time Compliance Supervisor from October 2011 to May 10, 2016, at a rate of $25 per hour. (Referee Decision, Finding of Fact (FOF) ¶ 1.) Claimant had health issues that caused her to request an accommodation of an adjusted work schedule, which Employer initially accommodated to allow Claimant to attend therapy and doctor appointments. (*Id.* ¶ 2.) Due to Claimant's chronic health issues, she was off from work on a medical leave of absence pursuant to the Family and Medical Leave Act (FMLA).[2] (*Id.* ¶ 3.) After Claimant exhausted all of her FMLA leave, Employer sent her notification that if she did not return to full-duty work by May 9, 2016, termination proceedings would begin. (*Id.*) Claimant provided Employer medical documentation stating she was able to return to full-duty work as of May 9, 2016, and she returned to work for her regularly scheduled shift on May 10, 2016. (*Id.* ¶ 4.)

Claimant did not return to work after May 10, 2016, due to a relapse in her health condition. (*Id.* ¶ 5.) Claimant did not notify Employer's Human Resources

---

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act[.]

*Id.*

[2] 29 U.S.C. §§ 2601-2654.

Department that she needed additional leave. (*Id.*) Claimant then received documentation from her doctor indicating that she was able to return to work as of May 19, 2016; however, she did not provide the documentation to Employer and did not provide Employer with any other notification of when she could return to work. (*Id.* ¶ 6.) On May 21, 2016, Claimant broke her wrist in a car accident. (*Id.* ¶ 7.) Claimant notified her immediate supervisor of the car accident and her need for an additional leave of absence. (*Id.*) In early June 2016, Claimant's doctor released her to return to full-duty work, but Claimant did not notify Employer. (*Id*. ¶ 8.) On June 7, 2016, Employer notified Claimant that she was being suspended for one day for failing to return to work. (*Id.* ¶ 9.) Claimant did not contact Employer to discuss the suspension or attempt to return to work. (*Id.*) Employer sent Claimant another notice on June 21, 2016, stating that she was being suspended for three days for failing to return to work and that Claimant had to return to work immediately or termination proceedings would begin. (*Id.* ¶ 10.) Claimant still did not contact Employer to discuss her suspensions or attempt to return to work. (*Id.*) Claimant did not perform work for Employer after May 10, 2016. (*Id.* ¶ 11.)

Following Claimant's separation with Employer, Claimant applied for UC benefits. (Certified Record (C.R), Item No. 1.) On August 22, 2016, the Altoona UC Service Center denied benefits for willful misconduct under Section 402(e) of the Law,[3] finding that Claimant was warned about her attendance and was

---

[3] 43 P.S. § 802(e). That section provides in relevant part:

An employe shall be ineligible for compensation for any week --

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act[.]

discharged for absenteeism without good cause for the last absence. Claimant filed a timely appeal. A hearing was held before a Referee on September 23, 2016, attended by Claimant, pro se, and Employer's attorney and witness. The hearing was postponed when Employer requested that the Referee also consider whether Claimant voluntarily terminated her employment and was therefore ineligible for benefits under Section 402(b) in addition to the original issue of whether Claimant committed willful misconduct under Section 402(e).

At the continued hearing, Claimant and Employer's witness testified regarding Claimant's absences and whether she notified Employer of the need for further leave. Thereafter, the Referee issued a decision affirming the UC Service Center's denial of benefits, but on the ground that Claimant was ineligible for benefits under Section 402(b), not Section 402(e). The Referee explained that there was a conflict over whether Claimant voluntarily abandoned her employment or she was terminated. (Referee Decision at 2.) The Referee described the parties' positions as follows:

> The employer provided testimony that although the claimant's employment was eventually terminated by the employer, the termination occurred following the claimant abandoning her job. The claimant refuted the employer's testimony, insisting that throughout her absence, she had periodically been in contact with her immediate supervisor and notified her of her need to be off work due to an ongoing health issue and later an automobile accident.

(*Id.*) The Referee found that although Claimant was released back to work full duty for her mental health concerns on May 19, 2016, and for her injury following the automobile accident, she never returned to work or contacted Employer to request an accommodation. (*Id.*) Therefore, the Referee found that Claimant voluntarily

---

*Id.*

4

terminated her employment by failing either to return to work or to maintain contact with Employer.  (*Id.* at 2-3.)

However, the Referee explained that in separations relating to health, a claimant may still be eligible for benefits if she can provide competent evidence that "(1) at the time of separation, adequate health reasons existed which justified quitting work; (2) prior to leaving, the claimant informed the employer of the health-related work problem; and (3) the claimant remains able and available for suitable work, including any offered by the current employer." (*Id*. at 4.)  The Referee found that Claimant did not meet her burden because she did not make reasonable attempts to preserve her employment; nor did she maintain reasonable contact with Employer as required to establish a necessitous and compelling reason for voluntarily leaving her job.  (*Id.* at 4-5.)  Thus, the Referee found Claimant was ineligible for benefits under Section 402(b) of the Law.  (*Id*. at 5.)  The Referee also stated that benefits would still have been denied had the Referee found Claimant was involuntarily terminated because an employer can reasonably expect an employee to maintain reasonable contact with her employer regarding absences, and Claimant failed to maintain that type of contact with Employer.  (*Id.*)

Claimant appealed this decision to the Board, arguing that she was not permitted to present a letter from her doctor substantiating her claim that she had a necessary and compelling reason for voluntarily terminating her employment.  In an Order dated January 3, 2017, the Board adopted and incorporated the Referee's findings and conclusions, and affirmed the Referee's decision.  (Board Order.)

In order to appeal the Board's Order, Claimant was required to file a Petition for Review (Petition) with this Court no later than February 2, 2017.  On January 20, 2017, Claimant's attorney mailed Claimant's Petition to this Court via the United

States Postal Service (USPS). (Claimant's Answer to Motion ¶ 3.) Despite being correctly addressed, the Petition was, according to a printout Claimant submitted as Exhibit B to her Answer to the Board's Motion, apparently returned to Claimant's attorney on February 2, 2017.[4] (*Id.*) Claimant's attorney then sent the Petition again via FedEx overnight delivery on February 2, 2017, and the Petition was not received by this Court until February 3, 2017, which was one day past the filing date. (*Id.* ¶ 4 & Ex. C.)

By Order dated February 17, 2017, this Court indicated that Claimant's Petition may be untimely and directed the parties to address whether the Petition was timely in their principal briefs on the merits. The Board then filed its Motion,[5] and Claimant filed an Answer thereto. This Court indicated by Order dated March 22, 2017, that the Motion would be decided with the merits of the Petition.

Thus, for disposition before this Court are both Claimant's Petition and the Board's Motion. Turning first to the Board's Motion, "[a] petition for review of a quasijudicial order . . . shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order." Pennsylvania Rule of Appellate Procedure 1512(a)(1), Pa. R.A.P. 1512(a)(1). Further, "[a]n appellate court . . . may not enlarge the time for filing a . . . petition for review." Pennsylvania Rule of

---

[4] Claimant indicates in her Answer that the Petition was mailed back to her office on February 1, 2017, and that she sent the Petition again the next day. A printout detailing the USPS tracking details for the Petition appears to indicate that the Petition was returned to Claimant's counsel's office on the morning of February 2, 2017. (Claimant's Answer to Board's Motion, Ex. B.)

[5] The Board's Motion alternatively requested that this Court's Order of February 17, 2017, be amended to state this Court's "opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal [to the Pennsylvania Supreme Court] from the order may materially advance the ultimate termination of the matter." (Board's Motion, Wherefore clause.) If this Court denied both, the Board further requested an additional 30 days from the date of the Order in which to file the certified record. The March 22, 2017 Order granted the Board an additional 30 days to certify the record.

Appellate Procedure 105(b), Pa. R.A.P. 105(b). This Court explained the importance of timely filing as follows:

> The timeliness of an appeal and compliance with the statutory provisions which grant the right of appeal go to the jurisdiction of the court to hear and decide the appeal. . . . The courts have no power to extend the period for taking appeals, absent fraud or a breakdown in the court's operation through a default of its officers.

*Iannotta v. Phila. Transp. Co.*, 312 A.2d 475, 476 (Pa. Cmwlth. 1973) (citations omitted).

Pennsylvania Rule of Appellate Procedure 1514(a) requires filing with the Prothonotary "in person or by first class, express, or priority United States Postal Service mail." Pa. R.A.P. 1514(a). The rule further states the following:

> If the petition for review is filed by first class, express, or priority United States Postal Service mail, the petition shall be deemed received by the prothonotary for the purposes of Rule 121(a) (filing) on the date deposited in the United States mail, as shown on a United States Postal Service Form 3817, Certificate of Mailing, or other similar United States Postal Service form from which the date of deposit can be verified. The certificate of mailing or other similar Postal Service form from which the date of deposit can be verified shall be cancelled by the Postal Service and shall show the docket number of the matter in the government unit, and shall be either enclosed with the petition or separately mailed to the prothonotary.

*Id.* Claimant argues the Petition should be deemed received on February 2, 2017, when it was deposited with FedEx. Claimant's attorney originally mailed the Petition first class, certified USPS mail, but did not obtain a USPS Form 3817 or other similar USPS form; nor was the docket number included on the printout attached as Exhibit B to Claimant's Answer to the Board's Motion. When the first Petition was returned to Claimant's Attorney as undeliverable, she sent the Petition

on February 2, 2017, via FedEx overnight delivery. However, Rule 1514(a) of the Pennsylvania Rules of Appellate Procedure does not deem the date of deposit with FedEx as the date of filing with the Prothonotary. Claimant's counsel again did not obtain a USPS Form 3817 or other similar USPS form which would have allowed the second filing to be deemed received on February 2, 2017, the due date for the Petition. Thus, there is no Pennsylvania Rule of Appellate Procedure that would allow for this Court to deem the Petition timely filed.

In the alternative, Claimant argues this Court should grant her *nunc pro tunc* relief to allow the late filing because there was an administrative breakdown with the USPS. Here, Claimant's attorney mailed the Petition nearly two weeks before the due date of February 2, 2017. USPS attempted delivery to this Court on January 22, 2017, but, for some unknown reason, USPS returned the Petition as "Undeliverable as Addressed" despite being correctly addressed to this Court. (Claimant's Answer to Board's Motion, Ex. B.) Exhibit B, attached to Claimant's Answer to the Board's Motion, shows the USPS tracking information of the original Petition, and Exhibit C shows the FedEx Proof of Delivery of the second Petition. Despite both Exhibits showing the same correct address, the Petition mailed on January 20, 2017, was returned by USPS as "Undeliverable as Addressed" on February 2, 2017. Over that interim period of 10 days between when USPS attempted delivery of the Petition to when USPS returned it to Claimant's counsel, the Petition was apparently in USPS's possession. When USPS returned the Petition to Claimant's counsel on February 2, 2017, it was the last day on which Claimant could have filed a timely Petition. While the reason for the late filing does not appear to be caused by fraud or a breakdown in this Court's operations, the Pennsylvania Supreme Court added another exception in *Bass v. Commonwealth*, 401 A.2d 1133

8

(Pa. 1979), and later explained the exception in *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996):

> We believe a better statement of the rule in *Bass* is that where an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal nunc pro tunc.

*Id.* Here, while it would have been more prudent for counsel to have used the procedure outlined in Rule 1514(a) of the Pennsylvania Rules of Appellate Procedure, this is not a case where Claimant's attorney failed to anticipate a delay in mailing, as the original Petition was mailed nearly two weeks prior to the filing deadline, allowing much more time than necessary for the petition to be mailed from Pittsburgh, Pennsylvania, to Harrisburg, Pennsylvania. However, instead of USPS either delivering the mail, which was correctly addressed to the Court, or returning the Petition promptly to Claimant's counsel, it remained in USPS's possession for 10 days.

In *Criss v. Wise*, 781 A.2d 1156, 1157 (Pa. 2001), our Supreme Court rejected appellee's claim that her attorney's failure to anticipate a delay in the United States mail constituted extraordinary circumstances warranting *nunc pro tunc* relief. There, appellee's counsel asked a receptionist at the law firm from whom he rented space to mail the notice of appeal, which was from a compulsory arbitration award. *Id.* at 1158. The receptionist did so by placing it in a mailbox at 5:10 p.m. on December 22, 1998. *Id.* The timing for filing an appeal expired on December 28, and appellee's notice of appeal was not received by the Court of Common Pleas until December 30. *Id.* Unlike the Rules of Appellate Procedure, the Rules of Civil

9

Procedure do not allow for a notice of appeal to be deemed filed when deposited with USPS, the Court noted. *Id.* at 1159. The Court concluded that delays in the mail are both foreseeable and avoidable, and "[a]ppellee's failure to anticipate a potential delay in the mail was not such a non-negligent circumstance for which an appeal *nunc pro tunc* may be granted." *Id.* at 1160.

Unlike in *Criss*, Claimant's attorney could not have foreseen that when she mailed Claimant's Petition on January 20, 2017, well before the filing deadline, that USPS would not deliver the document for 14 days before returning it to her office as undeliverable as addressed on February 2, 2017, even though Claimant's attorney took care to ensure the mailing was properly addressed to this Court.

Indeed, the circumstances here are much more comparable to those in *Bass*, where an appeal *nunc pro tunc* was permitted, than in *Criss*. In *Bass*, the papers necessary for filing an appeal were ready for filing six days prior to the deadline and were placed on the desk of the secretary responsible for ensuring that appeals were timely filed. *Bass*, 401 A.2d at 1134. The secretary became ill and left work, not returning until after the expiration of the period for filing an appeal. *Id.* at 1134-35. Although there were steps Claimant's attorney here could have taken to avoid the Petition being untimely filed, such as obtaining a USPS Form 3817, just as the attorney in *Bass* could have taken additional steps to ensure the notice of appeal was timely filed, such as having another secretary check the ill secretary's desk, this does not rise to the level of negligence on the part of Claimant's attorney. *Id.* at 1134.

The reason for the late filing here was not the negligence of either Claimant or her attorney, but was the result of USPS inexplicably returning the Petition to Claimant's attorney's office as undeliverable as addressed even though it was correctly addressed to this Court, and USPS's retention of the Petition for 10 days

10

after USPS was unable to deliver it. Further, the Board did not allege any prejudice caused by the very short delay of one day. Under these specific facts, this Court will allow the appeal *nunc pro tunc* and will therefore deny the Motion.

Turning to the merits of Claimant's Petition,[6] Claimant first argues that the Board erred in finding she voluntarily terminated her employment and is ineligible for benefits under Section 402(b) of the Law. Claimant cites *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1045 (Pa. Cmwlth. 2002) for the proposition that an employee voluntarily terminates her employment if she "resigns, leaves, or quits employment without action by the employer." Claimant argues that she did not resign, leave, or quit her employment, but continued to work, and Employer chose to interpret this as a voluntary termination. Claimant also argues that Employer took the direct action that resulted in her termination.

Despite Claimant's allegation before the Referee that she did return to work after May 10, 2016, the Referee found, and the Board affirmed, that she did not perform work for Employer after this date. (FOF ¶ 11.) "[I]n an unemployment compensation case, the Board is the ultimate factfinder and is empowered to make credibility determinations. In making those determinations, the Board may accept or reject the testimony of any witness in whole or in part." *McCarthy v. Unemployment Comp. Bd. of Review*, 829 A.2d 1266, 1269-70 (Pa. Cmwlth. 2003) (citations omitted). Claimant does not argue that the Board's finding that she did not return to work after May 10, 2016, is unsupported by substantial evidence and, even if she did, substantial evidence supports the Board's finding. This Court is

---

[6] "Our review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact were supported by substantial evidence." *Doyle v. Unemployment Comp. Bd. of Review*, 58 A.3d 1288, 1291 n.2 (Pa. Cmwlth. 2013) (citation omitted).

11

therefore bound by the Board's finding that Claimant did not return to work after May 10, 2016.

Employer argues that Claimant's failure to return to work or to contact Employer evidenced a conscious intention to voluntarily quit her employment. This Court has held that an employee who leaves work without informing her employer when she intends to return to work can be considered to have voluntarily quit her employment. *See Iaconelli v. Unemployment Comp. Bd. of Review*, 892 A.2d 894, 897 (Pa. Cmwlth. 2006) (holding that even though employer changed the locks the same day claimant left her employment, claimant still voluntarily quit because she never attempted to return to work or contact her employer); *Simpson v. Unemployment Comp. Bd. of Review*, 395 A.2d 309, 311 (Pa. Cmwlth. 1978) (holding that claimant's absence of 11 days without informing employer when he would return was a voluntary quit).

Here, Claimant was released to return to work by her mental health doctor on May 19, 2016. In early June 2016, following Claimant's car accident, her medical doctor also released her to return to work. Claimant, however, did not return to work after May 10, 2016. Despite receiving suspension letters on June 7, 2016, and on June 21, 2016, for failing to return to work, Claimant did not return to work or contact Employer to discuss the suspensions or request an additional accommodation.[7] Claimant also did not provide Employer with documentation from her doctor that she was unable to work. The Board therefore did not err by determining Claimant voluntarily quit her employment.

---

[7] The Human Resources Administrator testified at the October 12, 2016 hearing that Claimant did call on July 11, 2016, indicating she would report to work the next day. Claimant, however, did not return to work on July 12, 2016; nor did she call the Human Resources Administrator to inform Employer that she was not coming into work. (Hr'g Tr. at 8, C.R. Item No. 12.)

12

Claimant then argues that even if she voluntarily quit her employment, she has a necessitous and compelling reason for quitting her employment because of her health issues and Employer's lack of accommodations. To establish that her health concerns were a necessitous and compelling reason for voluntarily quitting her employment, she must "(1) offer competent testimony that adequate health reasons existed to justify the voluntary termination, (2) have informed the employer of the health problems and (3) be available to work if reasonable accommodations can be made. Failure to meet any one of these conditions bars a claim for unemployment compensation." *Lee Hosp. v. Unemployment Comp. Bd. of Review*, 637 A.2d 695, 698 (Pa. Cmwlth. 1994) (citations omitted). The burden then shifts to the employer to show it made a reasonable attempt to identify and propose possible accommodations for the employee's health problem. *Watkins v. Unemployment Comp. Bd. of Review*, 65 A.3d 999, 1005 (Pa. Cmwlth. 2013).

The Board did not question that Claimant suffers from a chronic health condition. Claimant was sent a letter dated April 7, 2016, stating Employer could no longer offer her an accommodation and that she needed to return to work no later than May 9, 2016, and Claimant then provided a letter from her mental health doctor releasing her to full-duty work. (Referee Decision at 3.) Claimant reported to work on May 10, 2016, and then never returned. (FOF ¶ 11.) Claimant did not notify Employer that she was unable to continue to work, nor did she request a further accommodation. Claimant stated she did not request a further accommodation because she believed it would have been futile to do so, (Referee Decision at 4), but this was speculation on her part. Further, Employer specifically stated in the April 7, 2016 letter to Claimant that the accommodation process was ongoing and that she was free to speak to her supervisor or Human Resources regarding additional

13

accommodation requests. (*Id.* at 3.) Therefore, because Claimant did not inform Employer she needed an accommodation and did not provide Employer an opportunity to make a reasonable accommodation, her health concerns cannot be considered a necessitous and compelling reason to voluntarily quit her employment. The Board's Order is affirmed.[8]

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] In light of our determination, we need not address the parties' remaining contention as to whether Claimant is ineligible for unemployment compensation based on her willful misconduct.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theresa Scott,                                    :
                Petitioner        :
                                               :
         v.                          :        No. 125 C.D. 2017
                                               :
Unemployment Compensation                          :
Board of Review,                                   :
             Respondent        :

# **O R D E R**

**NOW**, December 20, 2017, the Motion of the Unemployment Compensation Board of Review (Board) to Quash the Petition for Review of Theresa Scott is hereby **DENIED**, and the January 3, 2017 Order of the Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge